IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HELEN C. BROWN                    :

                                  :

      v.                          : Civil Action No. DKC 2005-0052

                                  :

WASHINGTON METRO AREA TRANSIT
AUTHORITY                         :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) (1998), is the motion of Defendant to dismiss for lack of subject matter jurisdiction (paper no. 4). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendant's motion will be granted.

## I.  Background

On January 7, 2005, Plaintiff Helen C. Brown filed a single-count complaint against Defendant Washington Metro Area Transit Authority (WMATA), alleging a failure to promote on the basis of age in violation of the ADEA.  Defendant now moves to dismiss on grounds of sovereign immunity.

Plaintiff, a resident of Maryland, works for Defendant as an Assistant Supervisor of Rail Training.  Defendant WMATA is a regional transportation system serving the greater Washington,

D.C. area.   It was created in 1966 via a multistate compact between Maryland, Virginia and the District of Columbia ("WMATA Compact").   In 2003, Plaintiff applied for the position of Supervisor of Rail Training.   She contends that, although she was qualified for the position, a younger, less qualified individual was selected over her.   Plaintiff was over 40 years old at the time, and contends that her age was a determining factor in Defendant's decision not to promote her.   Plaintiff further alleges that she sustained economic damages as a result of Defendant's failure to promote her. She seeks $300,000 in back pay, compensatory damages and interest.   She also requests that Defendant be enjoined from continuing any and all discriminatory practices, and that the court enter an order requiring Defendant to retroactively promote her to the Supervisor of Rail Training position.

## II.  Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed. R. Civ. P. 12(b)(1).   The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.   *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction

2

over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.

Assertions of governmental immunity are properly addressed under Rule 12(b)(1).  *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing cases).  If the plaintiff's claims are barred by a defense of sovereign immunity, dismissal is required for lack of subject matter jurisdiction. *See, e.g. Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). Moreover, "because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997).

## III. Analysis

Defendant contends that in enacting the WMATA Compact, the signatories conferred their respective sovereign immunities upon the new agency, including Eleventh Amendment immunity from suit enjoyed by the states of Maryland and Virginia.  Paper 4 at 1. In response, Plaintiff alleges that Defendant waived its grant of constitutional immunity with respect to ADEA claims by

3

accepting federal transportation funds.  Paper 7 at 4.  For the following reasons, the court finds that Defendant did not relinquish its constitutional immunity against claims brought under the ADEA.  Plaintiff's claim is thus barred and the complaint will be dismissed for lack of subject matter jurisdiction.


**A. Sovereign Immunity for WMATA**

The Eleventh Amendment provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  Although sovereign immunity is generally only enjoyed by the state, "'some agencies exercising state power have been permitted to invoke the Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the state itself.'"  *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218, 222-23 (D.C.Cir. 1986) (quoting *Lake Country Estates v. Tahoe Reg. Planning Agency*, 440 U.S. 391, 400-01 (1979)).

Multistate entities are generally not accorded immunity absent "some good reason to believe" a transfer of immunity was intended by the covenanting states.  *Smith v. Wash. Metro. Area*

*Transit Auth.*, 290 F.3d 201, 206 (4th Cir. 2002) (quoting *Lake Country Estates*, 440 U.S. at 401).  Both the United States Court of Appeals for the Fourth Circuit and the United States Court of Appeals for the District of Columbia have found that the interstate compact creating WMATA "evinces the clear intent of its signatories to effect such a conferral." *Smith*, 290 F.3d at 206; *see Morris*, 781 F.2d at 220. As codified by each of the signatory jurisdictions, Section 80 of the WMATA Compact states that Defendant consents to suit "for its contracts and for its torts . . . committed in the conduct of any proprietary function," but specifically maintains that it "*shall not be liable for any torts occurring in the performance of a governmental function*."  Md. Code Ann. Trans. § 10-204(80) (2000); Va. Code Ann. § 56-529, 530 (2001); D.C. Code Ann. § 9-1107.01 (2001) (emphasis added).

**B. Type of Activity**

Thus, while WMATA enjoys sovereign immunity, the scope of the immunity is not all encompassing.  Only certain types of activities are immune, those undertaken as part of its governmental function.  It is not always easy to determine whether a particular function is governmental or proprietary. *See Smith*, 290 F.3d at 206. Indeed, in *Garcia v. San Antonio Metro Transit Auth.*, 469 U.S. 528, 542 (1985), the Supreme Court

found that such a distinction was "untenable" and must be abandoned.   In identifying the scope of WMATA's governmental immunity, legal principles developed under the Federal Tort Claims Act (FTCA) have proven to be "a useful analytical tool." *Smith*, 290 F.3d at 206-07.  The FTCA specifically reserves the federal government's immunity as to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."   28 U.S.C. § 2680 (1994). The "discretionary/ministerial" dichotomy employed by the FTCA draws a similar distinction between "acts of a governmental nature or function," for which immunity is preserved under the Compact's "governmental/proprietary" categorization, and legally prescribed or regulatory duties resulting in "ordinary common law torts," for which immunity is not preserved.   *Smith*, 290 F.3d at 206-07 (citing *Dalehite v. United States*, 346 U.S. 15, 28 (1953)).

Moreover, the WMATA Compact has "accepted the *Dalehite* conception" of distinguishing between the discretionary and ministerial functions of public officials in establishing the appropriate scope of immunity under the FTCA.   *Id.* at 207 (quoting *Sanders v. WMATA*, 819 F.2d 1151, 1155 (D.C.Cir. 1987)

("In granting immunity from tort actions to WMATA's 'governmental' functions, the Compact seems to us to have accepted the *Dalehite* conception which we have just outlined"). Furthermore, the discretionary functions of government officials are generally considered to be "a subset of governmental functions." *Id.; Sanders*, 819 F.2d at 1155. Thus, ultimately, "all 'discretionary' activities of a governmental entity under the FTCA constitute 'governmental' activities within the meaning of the 'governmental/proprietary' test" adopted in the WMATA Compact. *Smith*, 290 F.3d at 207.

In view of these principles, the Fourth Circuit has adopted two alternate tests developed by the United States Court of Appeals of the District of Columbia to evaluate what constitutes a "governmental" function under the WMATA Compact. *See id.* at 207 & n.9; *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C.Cir. 1997). First, the court must assess whether, in carrying out the disputed activity, Defendant was engaged in a quintessential governmental function. *Id.* at 207. If so, the challenged activity falls within the scope of Defendant's immunity under the Compact. *Id.* Otherwise, the court must determine whether the conduct in question would be considered discretionary or ministerial under the FTCA. *Id.* If the nature of the challenged activity is deemed discretionary,

it falls within the FTCA's "discretionary function exception," and will be adjudged immune. *Dalehite*, 346 U.S. at 32.

As defined by the Supreme Court, a discretionary function "is one that involves choice or judgment" exercised "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Burkhart*, 112 F.3d at 1216-17 (1997).  In order to determine whether a challenged activity is in fact discretionary, the court must first evaluate whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322; *Burkhart*, 112 F.3d at 1217 (quoting *Gaubert*).  Once the court is satisfied that "the challenged conduct involves an element of judgment or choice," it must determine whether Defendant's exercise of judgment is "grounded in social, economic, and political policy," and thus qualifies as being "of the kind that the discretionary function exception was designed to shield." *Dalehite*, 346 U.S. at 36.

Defendant's failure to promote Plaintiff was certainly a discretionary decision.  There is no law, regulation or policy specifically prescribing how Defendant is to manage or supervise its employees.  *See Burkhart*, 112 F.3d at 1217.  On the contrary, under the WMATA Compact, Defendant is given broad power to "[c]reate and abolish . . . employments," and "provide

8

for the qualification, appointment, [and] removal . . . of its
. . . employees without regard to the laws of any of the
signatories." Md Code Ann. Trans. § 10-204(12)(g). Defendant
may also "[e]stablish, in its discretion, a personnel system
based on merit and fitness," *id.* § 10-204(12)(h); and "[c]ontrol
and regulate . . . the service to be rendered," *id* § 10-
204(12)(j).

Available precedent supports this view. The United States
Court of Appeals for the District of Columbia has held that
decisions concerning the hiring, training and supervision of
WMATA employees are a "governmental function" within the meaning
of the WMATA Compact. *See Burkhart*, 112 F.3d at 1217. In *Jones
v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C.Cir.
2000), the court cited to *Burkhart* for the proposition that
Defendant's hiring, training, and supervisory functions for
which it is immune under the ADEA include as well a promotion
decision. *Id.* at 432.[1] Thus, the decision concerning Plaintiff's
promotion falls within the scope of sovereign immunity.

---

[1] While the Fourth Circuit has not yet reached the question
of whether employment decisions fall under the WMATA Compact's
"governmental/discretionary function" immunity, it has stated
that a "proper consideration in construing the Compact is the
maintenance of consistency between the legal interpretations of
the two federal circuits most likely to hear cases in which
WMATA is a party." *Smith*, 290 F.3d at 207 n.9. Thus, the
District of Columbia decisions are particularly helpful.

## C. Abrogation or Waiver

There are two instances when an individual may sue a state, despite sovereign immunity.  First, Congress may abrogate a state's Eleventh Amendment immunity from suit pursuant to its enforcement powers under § 5 of the Fourteenth Amendment. Second, a state may waive immunity by making a "clear declaration" of its intent to submit to federal court jurisdiction. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999).

In the present context, as Plaintiff readily concedes, the abrogation exception to the doctrine of sovereign immunity is unavailing.  The Supreme Court held in *Kimel v. Florida Board of Regents,* 528 U.S. 62 (2000), that Congress had exceeded the scope of its Fourteenth Amendment enforcement power in attempting to abrogate state sovereign immunity under the ADEA. Because age is not considered a suspect class under the Court's equal protection jurisprudence, the Court found that a prophylactic remedy of abrogation would be disproportionate to the evil presented.  *Id.* at 63-64.   The ADEA is thus unenforceable against Defendant absent a clear and unambiguous waiver.

The "'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.'" *College Savings*, 527 U.S. at 676 (quoting *Atascadero*, 473 U.S. at 241). There has been no explicit waiver in this case. Plaintiff largely rests her opposition on the contention that Defendant waived its constitutional immunity with respect to ADEA claims by accepting federal transportation funds, and she refers to the provisions of the Civil Rights Remedies Equalization Act (CRREA), which conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity under certain enumerated federal anti-discrimination statutes. Paper 7 at 3. Plaintiff contends that she is therefore entitled to bring suit pursuant to a "constructive waiver" of state sovereign immunity. *See College Savings*, 527 U.S. at 686.

It is correct that Congress may, "in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that [it otherwise] could not require them to take," *College Savings*, 527 U.S. at 686, but that principle simply does not apply to the ADEA, which is not a spending statute.

11

The CRREA states in pertinent part:

> A state shall not be immune under the
> Eleventh Amendment of the Constitution of
> the United States from suit in Federal court
> for a violation of section 504 of the
> Rehabilitation Act of 1973, title IX of the
> Education Amendments of 1972, the Age
> Discrimination Act of 1975, title VI of the
> Civil Rights Act of 1964, or the provisions
> of any other Federal statute prohibiting
> discrimination by recipients of Federal
> financial assistance.

42 U.S.C. § 2000d-7(a)(1).[2]

Defendant has indeed waived its Eleventh Amendment immunity under the terms of the CRREA as to certain statutes. *See Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161, 1164 (D.C.Cir. 2004)(finding waiver for the Rehabilitation Act of 1973). However, contrary to Plaintiff's assertion, the ADEA is outside the scope of that provision. The ADEA is not explicitly mentioned in the text of the statute. 42 U.S.C. § 2000d-7(a)(1). Nor can the ADEA be considered a "federal statute prohibiting discrimination by recipients of federal financial assistance," *id.*, as it is not a Spending Clause

---

[2] The Age Discrimination Act of 1975 (ADA), 42 U.S.C. §§ 6101 *et seq.*, generally prohibits denial of benefits or discrimination on the basis of age under any program or activity receiving Federal financial assistance. However, 42 U.S.C. § 6103(c)(1) states that employment practices are not within the scope of the act. *Cf. Tyrell v. City of Scranton*, 134 F.Supp.2d 373 (M.D.Pa. 2001). Moreover, there may not even be a private right of action for damages under the ADA. *Id.*

enactment, and does not contain language specifically addressing such recipients.  *Compare* Age Discrimination Act of 1975, 42 U.S.C. § 6101 ("It is the purpose of this chapter to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance."), *with* ADEA, 29 U.S.C. § 623(a) ("It shall be unlawful for an employer to limit, segregate or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .").

Indeed, the court's decision in *Barbour*, 374 F.3d at 1165, that WMATA was subject to the CRREA and had waived its immunity with respect to the plaintiff's claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794, was specifically based on the fact that it is a funding statute.  Additionally, the Rehabilitation Act was explicitly listed in the text of the CRREA as a statute under which immunity would be waived.  The court noted that under *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), a Congressional waiver provision is constitutional "only if it manifests 'a clear intent to condition participation *in the programs funded under the Act* on a state's consent to waive its constitutional immunity.'" *Barbour*, 374 F.3d at 1163 (quoting *Atascadero*, 473 U.S. at 247)

13

(emphasis added).   In light of the fact that the ADEA does not
confer a grant of funds or indeed even address the recipients of
federal financial assistance with particularity, the *Barbour*
decision is inapposite.   Similarly, in *A.W. v. The Jersey City
Pub. Sch.*, 341 F.3d 234, (3$^d$ Cir. 2003), the court interpreted
the CRREA's general waiver  provision to include all claims
filed under the Individuals with Disabilities in Education Act
("IDEA"), 20 U.S.C. § 1400, *et seq.*  However, the IDEA is also
a Spending Clause enactment, unlike the ADEA, which is merely
prophylactic in nature.   *Compare* IDEA, 20 U.S.C. § 1411 ("The
Secretary shall make grants to States and the outlying areas,
and provide funds to the Secretary of the Interior, to assist
them to provide special education and related services to
children with disabilities in accordance with this subchapter.")
*with* ADEA, 29 U.S.C. § 623(a).

## IV.  Conclusion

For the foregoing reasons, the court finds that Defendant
is immune from Plaintiff's asserted claim on grounds of
sovereign immunity.   Accordingly, Defendant's motion will be
granted, and the case will be dismissed for lack of subject
matter jurisdiction.   A separate Order will follow.

                                    /s/
                              DEBORAH K. CHASANOW

14

United States District Judge